United States District Court
Middle District of Florida
Jacksonville Division

**SHAWN FORSTER,**

       *Plaintiff,*

v.                                   **No. 3:13-cv-866-J-PDB**

**SMARTSTREAM, INC., &**
**ROBERT THOMPSON,**

       *Defendants.*

---

## Order

    Shawn Forster alleges Smartstream, Inc., ("Smartstream") and Robert Thompson violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime wages. Doc. 1. Forster moves for summary judgment. Doc. 44. Thompson, proceeding without a lawyer, opposes the motion, Doc. 49, and also moves for summary judgment. Doc. 45. Forster opposes Thompson's motion. Doc. 46. Forster also moves for default judgment against Smartstream, Doc. 51, which has not appeared in the case.[1]

---

[1] Forster also asserts a claim against Smartstream and Thompson for unpaid commissions. Doc. 1 at 6–7. He seemingly brings the claim under Florida law, but it is unclear. *See generally* Doc. 1 at 6–7. Neither party moves for summary judgment on the claim. *See generally* Docs. 44, 45. Although Forster appears to be moving for default judgment on both claims, the only reference to the unpaid-commissions claim is his contention that he "pled a *prima facie* case as to each count, and that Smartstream has defaulted by failing to defend this matter." Doc. 51 at 4. He substantively addresses only the overtime claim. *See generally* Doc. 51. The Court does not address the unpaid-commissions claim in resolving the motions for summary judgment.

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute will not necessarily preclude summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

The movant has the initial burden of showing there is no genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant satisfies that burden, the non-movant "must then go beyond the pleadings, and by its own [evidence], designate specific facts showing that there is a genuine issue for trial." *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (internal quotation marks omitted). Conclusory allegations without supporting evidence are insufficient. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar evidence negating the opponent's claim.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d

1428, 1437 (11th Cir. 1991) (emphasis omitted). Instead, it must show "an absence of evidence to support the nonmoving party's case" or "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id. at 1438*. If it has done so, "the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224–25 (11th Cir. 2002).

"Cross-motions for summary judgment will not, in themselves, warrant ... granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). The standard of review on cross-motions for summary judgment is the same as when only one party files a motion; the court considers each motion on its own merits, resolving all reasonable inferences against the party with respect to that party's motion. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

## II. Asserted Facts

The following facts are undisputed. They are from declarations of Forster, Doc. 44-1, Jason Charleston, Doc. 44-4, Thompson, Doc. 45 at 5–7, Atibo Petersen, Doc. 45 at 13–14, and Ray Donelly, Doc. 45 at 16–17; the Smartstream Employee Manual, Doc. 44-2; Forster's payroll records, Docs. 44-3, 44-8; Forster's work-order records,

3

Docs. 44-5, 44-8; work emails, Docs. 44-13, 44-14, 44-17, 44-18, 44-19, 44-20, 45 at 19–20; and Forster's employment agreement, Doc. 44-16.[2]

Smartstream, now defunct, provided customers with technology support, including server, website, and email hosting. Doc. 44-1 ¶ 3; Doc. 45 at 5 ¶ 4, 13 ¶ 3, 16 ¶ 3. Robert Thompson, Marion Thompson, and John Thompson were Smartstream shareholders. Doc. 45 at 5 ¶ 3, 9 ¶ 3, 11 ¶ 2. Marion Thompson was Smartstream's payroll manager from March 2005 to June 2014. Doc. 45 at 9 ¶ 2.

Forster worked for Smartstream as an engineer until February 2013. Doc. 44-1 ¶¶ 2, 4; Doc. 44-3; Doc. 44-16 at 3; Doc. 45 at 5 ¶¶ 5, 28. His responsibilities included helping customers—on-site and remotely—and building, analyzing, and maintaining computer networks and email systems. Doc. 44-1 ¶ 5. He received a gross weekly salary of $403.85. Doc. 44-1 ¶ 7, Doc. 44-3. He also received commissions based on amounts billed to clients, provided to him at various intervals, totaling $18,918 for

---

[2]Forster submits emails between his counsel and Thompson regarding discovery requests. Doc. 44-6, that are not pertinent to whether summary judgment is warranted. Thompson submits pages 27 and 28 of the Employee Manual, Doc. 45 at 37, 39, and emails between Thompson and Forster, Doc. 45 at 24–26, which are duplicative except Thompson's submission of the employee manual contains an additional section, "Bonus Structure Explained," Doc. 45 at 39. Forster does not dispute the authenticity of this version of the employee manual or contend it was not in effect during his employment. Thompson also submits work emails from customers related to Forster's work performance and one regarding another employee, Doc. 45 at 22, 28–35, that are not pertinent to whether summary judgment is warranted. The declarations of Marion Thompson, Doc. 45 at 9, and John Thompson, Doc. 45 at 11, are of limited evidentiary value as they simply adopt the statements in Thompson's affidavit as true without any explanation as to the basis for their personal knowledge beyond their role as Smartstream shareholders. The Court limits its consideration of their declarations to the statements they are Smartstream shareholders, which are facts they necessarily would know. Doc. 45 at 9 ¶ 3, 11 ¶ 2.

4

45 weeks from April 2012 to March 2013. Doc. 44-1 ¶ 8, Doc. 44-3;[3] Doc. 45 at 39

(generally providing bonuses[4] paid after 30 days at the end of the following month to

allow clients time to dispute any work performed). He did not receive overtime pay.

Doc. 44-1 ¶ 22.

Under Smartstream's employee manual, engineers work a minimum of 8 hours

a day but may work overtime to timely finish jobs. Doc. 44-2 at 19; *accord* Doc. 44-12.

Forster worked approximately 60 hours a week for the 57 weeks he worked for

Smartstream.[5] Doc. 44-1 ¶ 22.

---

[3]There is a two-week gap in the payroll records for August 3 and August 10, 2012. Doc. 44-3 at 6. Forster does not explain the gap. There is also a perhaps related gap in work orders from July 20 to July 30, 2012, Doc. 44-5 at 11, suggesting a vacation or leave of absence. Without an explanation regarding the work and pay during those two weeks, the Court does not consider them in resolving the motions for summary judgment.

[4]For purposes of the motions for summary judgment, the Court uses the terms bonuses and commissions interchangeably. The only pay Forster received in addition to his weekly salary was based on a percentage of the work billed to clients and listed on his payroll records as "Engineer Bonus." Doc. 44-3 at 3–12, 14.

[5]Although Thompson argues "both parties offer contradictory statements as to the number of hours [Forster] actually worked," observing that he has the records on a server he cannot access, Doc. 49 at 3, he did not produce any evidence to dispute Forster's approximation of hours worked. The Court cannot speculate about the evidence on the server. Forster submits his declaration regarding the number of hours he worked and the absence of time records. Doc. 44-1 ¶¶ 12–14, 22. Thompson, as the non-movant, cannot rely on the potential for other evidence but must produce actual evidence establishing more than "some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (quoted). He also may not rely on Forster's work records because Forster has presented undisputed evidence that they do not accurately reflect the hours worked for tasks like answering phone calls less than five minutes, driving to and from client locations, training and assisting other technicians, and research projects that were not billable events. Doc. 44-1 ¶¶ 13–19. Although Thompson submits declarations from former employees, Peterson and Donelly, who state they billed all time spent working for any client, were not expected to, and did not, perform work outside of billable work, and reported and were compensated for travel time, Doc. 45 at 14 ¶¶ 13–18, 16–17 ¶¶ 11–16, the

The parties dispute whether Thompson, whose name was on the employment agreement Forster signed, Doc. 44-16,[6] or Mark Eizenhafer hired him, Doc. 45 at 5 ¶ 6. They dispute the duration of Forster's employment. Doc. 44-1 ¶ 2 (January 2012 through February 24, 2013), Doc. 45 at 5–6 (April 2012 to February 2013).[7] They dispute the extent of Thompson's role in supervising him, whether extensive, Doc. 44-1 ¶¶ 6 (Forster "reported directly to Bobby Thompson," took direction from him, and submitted all scheduling and billing records to him.), 9 ("Thompson made the

_____

declarations do not pertain to Forster's billing practices and therefore are not dispositive. Forster also submits the declaration of former fellow engineer Charleston who states that he and Forster normally worked 60 to 70 hours. Doc. 44-4 ¶¶ 20–21. Without any indication of what particular week(s) Forster may have worked 70 hours, the Court cannot rely on this statement to consider Forster's overtime claim. The Court thus accepts Forster's uncontroverted 60-hour a week estimate to decide the motions for summary judgment.

[6]The employment agreement is far from conclusive evidence, as the first page indicates it is an agreement between Juan Gil and Smartstream for full-time employment beginning June 2009. Doc. 44-16 at 1. Although Forster signed and dated the third page of the agreement, the "accepted by" and date lines for Thompson are blank. Doc. 44-16 at 3. The final page is an offer letter from February 2012 addressed to "Jill," which lists a base salary of $29,000 a year. Doc. 44-16 at 4. At $403.85 a week, Forster's salary would have been $21,000.20. For purposes of Forster's motion for summary judgment, the Court views this evidence in the light most favorable to Thompson and rejects Forster's contention that Thompson signed his offer letter and employment agreement. Doc. 44 at 6.

[7]Thompson's declaration contains typographical errors, first stating that Forster worked for Smartstream from April 2014 to February 2014 but later stating he reported to Eizenhafer, beginning in April 2012, and Forster submitted his letter of resignation in February 2013. Doc. 45 at 5 ¶¶ 5–6, 10, 14, 28. Forster's work order records show work beginning in January 2012, Doc. 44-5 at 1, while his payroll records begin in April 2012, Doc. 44-3 at 1. Thompson submits emails in which Eizenhafer states Forster's first day of work was January 2012. Doc. 45 at 19–20. The exact dates of Forster's employment are immaterial to the resolution of either summary judgment motion, as the Court considers whether the record evidence regarding Forster's work hours and payments show either his entitlement to overtime or his employer's entitlement to claim an exemption.

6

determination of the amounts actually billed to clients, and ultimately how much I would earn in commissions."); Doc. 44-13 (email chain between Thompson and Forster discussing the loss of a client, Forster's work, and the potential for termination), or minimal, Doc. 45 at 5 ¶¶ 7, 14, 17 (Eizenhafer set Forster's work and pay schedule until September 2012, when Thompson took over but continued the pay schedule and work agreement Eizenhafer set).

## III.   Law & Analysis

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Unless an exemption exists, § 207 requires an employer to pay an employee for hours worked over 40 in a week at a rate not less than "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.101 ("Hours worked in excess of the statutory maximum in any workweek are overtime hours under the statute."). The purpose of the overtime-pay requirement "is twofold: (1) to spread out employment by placing financial pressure on the employer to hire additional workers rather than employ the same number of workers for longer hours; and (2) to compensate employees who for a variety of reasons worked overtime." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1256 n.4 (11th Cir. 2001). To establish a prima facie case for unpaid overtime wages, a plaintiff must establish (1) the defendant employed him; (2) the defendant is an enterprise engaged in interstate

commerce covered by FLSA; (3) he worked more than 40 hours a week; and (4) the defendant did not pay him overtime wages. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008).

Section 207(i) exempts commissioned employees of retail or service establishments from the FLSA overtime-wage requirement. It provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

The employer must show an FLSA exemption applies by "clear and affirmative evidence." *Klinedinst*, 260 F.3d at 1254. The Court construes exemptions narrowly against the employer who asserts them. *Jeffery*, 64 F.3d at 594. The commissioned-work exemption has three elements: (1) the employer must be a retail or service establishment; (2) the employee's regular rate of pay must exceed one and one-half times the federal minimum wage; and (3) the employee must earn more than half his salary in commissions from goods and services during a representative period not less than one month. *Rodriguez v. Home Heroes, LLC*, No. 8:13-cv-2711-T-26-26AEP, 2015 WL 668009, at *5 (M.D. Fla. Feb. 17, 2015) (unpublished) (quoting 29 U.S.C. §§ 207(i) & 779.410).

8

For the second element, the "regular rate of pay" is "'the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed' and 'by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'" 29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). "Regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee" 29 U.S.C. § 207(e). "The regular rate is determined by dividing the … total compensation during the workweek by the number of hours worked." *Klinedinst*, 260 F.3d at 1256 (citing 29 C.F.R. § 779.419(b)); *see also* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions)[8] in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). The FLSA "takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks." 29 C.F.R.

---

[8]The FLSA excludes from an employee's regular rate: (1) gifts or rewards not based on hours worked, production, or efficiency; (2) payments during occasional periods no work is performed like vacation, holiday, illness, etc., or for travel or other expenses; (3) discretionary payments in recognition of services performed at or near the end of the period and not pursuant to any contract, or payments made pursuant to profit-sharing, thrift or savings plan; (4) contributions to a trustee or third party for a retirement, life-insurance, accident, or other similar benefit plan; (5) extra compensation for hours over 8 a day or 40 a week; (6) extra compensation for working on Saturday, Sunday, holidays, or regular days of rest where it is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; (7) extra compensation under an employment contract or collective-bargaining agreement for work outside contracted workday or workweek where the rate is not less than one and one-half times the rate for work within the contracted work hours; and (8) income from stock options. 29 U.S.C. § 207(e).

§ 778.104. "[W]here bonus earnings cannot be identified with particular workweeks … some other reasonable, equitable method of allocation must be adopted." 29 C.F.R. § 778.209.

After obtaining the hourly rate, a court must compare it to the minimum rate of pay of the employee to determine if the rate is one and one-half times the minimum. 29 C.F.R. § 779.419(b). The federal minimum wage—applicable since July 2009—is $7.25. 29 U.S.C. § 206(a)(1). One and one-half times that wage is $10.88. An employee's regular rate of pay must exceed that amount for the employer to satisfy the second element of the commissioned-work exemption.

An employer must "maintain and preserve payroll or other records" for each employee subject to the minimum wage and overtime requirements … including the regular hourly rate of pay for any workweek in which overtime compensation is due, the hours worked each workday (fixed period of 24 consecutive hours), and the total hours worked each workweek (fixed period of 7 consecutive workdays). 29 C.F.R. § 516.2(a)(6)(i) & (7). If an employer fails to do so, and there is conflicting evidence regarding the number of hours worked per week, the number of hours "is a genuine issue of material fact for the factfinder." *Klinedinst*, 260 F.3d at 1257. But if the employee produces undisputed evidence regarding his working hours, the court may use the estimate on summary judgment to determine if those hours, combined with the records of the employee's compensation, establish the employee's regular rate of pay above one and one-half times the minimum wage. *Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258, 1267–68 (N.D. Ala. 2012); *see also Henriquez v. Total Bike,*

*LLC*, No. 13-20417-CIV, 2013 WL 6834656, at *3 (S.D. Fla. Dec. 23, 2013) (unpublished) (taking the plaintiff's estimate of hours worked as true for summary judgment, considering all compensation, and dividing by the total number of weeks times the alleged hours worked to determine regular rate of pay for the exemption).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638.

## A.    *Forster's Motion for Summary Judgment*

Forster argues he is entitled to summary judgment on liability because the undisputed facts establish Thompson is individually liable and not entitled to claim any exemption, and he worked over 40 hours a week without overtime compensation. Doc. 44 at 9–13. He argues he is entitled to summary judgment on damages because Thompson failed or refused to maintain records of his work hours. Doc. 44 at 13–20. Citing 29 C.F.R. §541.200 (defining "employee employed in a bona fide administrative capacity" in § 213(a)(1) to mean any employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"), he argues he cannot qualify for any exemption under 29 U.S.C. § 213(a)—whether executive, administrative, or

professional—because his salary was less than $455 a week. Doc. 44 at 9–11. He argues the commissioned-work exemption does not apply because the defendants[9] failed to maintain records of his hours worked preventing them from establishing they paid him at least one and one-half times the applicable minimum wage.[10] Doc. 44 at 11–12. Applying one and one-half times Florida's minimum wage for 2012 ($11.50) and 2013 ($11.68) to a regular rate of pay of $10.10, which Forster reached by dividing his salary of $403.85 by a normal 40-hour workweek, he contends the commissioned-work exemption does not apply. Doc. 44 at 13.

Because the defendants failed to offer time records, the work orders do not accurately reflect hours worked, and the defendants have presented no other evidence to negate his hours-worked approximation, Forster argues he may rely on his approximation of 60 hours a week. Doc. 44 at 13–20. He argues this establishes he worked 20 hours of overtime for 57 weeks and should have been paid an overtime rate of $15.15,[11] resulting in unpaid overtime wages of $17,271, liquidated damages

---

[9]Forster argues the Court should grant summary judgment against both defendants and refers to them collectively throughout the motion regarding their FLSA violations. Doc. 44. Because he moves for default judgment against Smartstream, the Court construes his motion for summary judgment as against Thompson individually.

[10]Forster suggests but does not argue that Thompson waived his right to assert the commissioned-work exemption by failing to raise it as an affirmative defense. Doc. 44 at 11. Because of the absence of argument, the Court does not consider whether the exemption is an affirmative defense; if it is, whether Thompson sufficiently raised it by asserting in his answer that Forster was not misclassified as exempt, Doc. 11 at 2; if he did not, whether Thompson may raise it for the first time outside of his answer; and, if he may not, whether leave to amend his answer would be appropriate in light of no stated or apparent prejudice to Forster.

[11]If an employer fails to compensate an employee for overtime hours "at a rate not less than one and one-half times the regular rate at which [they are] employed,"

of an equal amount,[12] for a total of $34,542, plus attorney's fees and costs. Doc. 44 at 20. He argues Thompson is jointly and severally liable with Smartstream because he owned the company and was its CEO, exercised control over the terms and conditions of Forster's employment by hiring him, drafting the employee handbook, supervising, managing, and disciplining him, and knew of the overtime Forster worked on nights and weekends, requesting Forster work after hours himself. Doc. 44 at 20–22.

Thompson responds summary judgment is unwarranted because the parties dispute whether Smartstream was a retail or service establishment and Forster's pay exceeded one and one-half times the minimum hourly rate. Doc. 49 at 2–4. Thompson argues most of Forster's pay came from commissions, and the record does not establish the number of hours he worked. Doc. 49 at 2–4. Thompson argues his base pay plus commission exceeded the $455 threshold and one and one-half times the minimum wage. Doc. 49 at 4.

---

29 U.S.C. § 207(a)(1), the employer is liable for "unpaid overtime compensation." *Id.* § 216(b). For an employee paid a constant weekly salary for fluctuating hours, the employer may calculate the regular rate by dividing the weekly salary by the number of hours actually worked. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942). That method—known as the "fluctuating workweek method"— "may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013).

[12]"Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grovery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)). But the Portal to Portal Act, 29 U.S.C. §§ 251–62, amended the FLSA to provide a safe harbor for an employer who can establish that it acted in good faith under the reasonable belief it had complied with the FLSA. *Id.* (citing 29 U.S.C. § 260). To satisfy the good-faith requirement, an employer must show that it acted with objective and subjective good faith. *Id.*

Although the latter argument appears to relate to the administrative exemption under 29 U.S.C. § 213(a) because he references the $455 amount, Thompson does not appear to argue Forster qualifies for any exemption other than the commissioned-work exemption. *See generally* Doc. 49.

Forster does not contend Thompson cannot satisfy the first element of the commissioned-work exemption—whether Smartstream is a retail sales establishment. The only issue now before the Court regarding the commissioned-work exemption relates to the second element—Forster's regular rate of pay (and whether Thompson can establish it without adequate records). The Court therefore limits its analysis to that issue.

Failing to keep records does not preclude Thompson from relying on the exemption, but it either creates a question of fact as to the number of hours worked if he can present disputed evidence, or permits Forster to rely on his own approximation of hours worked if he cannot. *See Klinedinst*, 260 F.3d at 1256–57; *Kuntsmann*, 903 F. Supp. 2d at 1267–68. For purposes of deciding the motions for summary judgment, the undisputed record shows that Forster worked 60 hours a week each week he worked for Smartstream. Doc. 44-1 ¶ 22. He submits payment records for 45 of those weeks and no other information regarding how much he was paid the remaining 12 weeks. Doc. 44-3. The Court can only determine on summary judgment the regular rate of pay for those weeks the record contains both hours worked and amounts paid. Although the regulations provide a regular rate of pay should be established weekly, the Court is limited to applying the bonuses during the

14

entire 45-week period because Forster received the bonuses intermittently and the record is silent as to what bonuses apply to what weeks.[13]

Taking $403.85 for 45 weeks ($18,173.25), adding $18,918 in commissions paid during that period ($37,091.25), and dividing by the total number of hours worked—60 a week for 45 weeks (2700)—the regular rate of pay is $13.74. This rate exceeds one and one-half times both the federal minimum wage rate (and the Florida minimum-wage rate that Forster applies without explanation). Forster is not entitled to summary judgment on the applicability of the commissioned-work exemption.

On Thompson's individual liability, he disputes the extent of his involvement with Forster. He explains he did not work for Smartstream until the last five months of Forster's employment there, instead working for an entirely different company, Jacksonville Electric Authority, until Eizenhafer's departure from Smartstream in

---

[13]Neither Forster nor Thompson address how the Court should calculate the rate of pay in light of intermittent bonuses. There is persuasive authority holding averaging is appropriate for commissioned work. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) ("Although United has divided Simons's total compensation by her total hours, there was no need to break down both week by week. Commission salesman [sic] have fluctuating hours and income, and it is unlikely that Congress meant to require employers to pay overtime in the lean weeks when the fat weeks more than make up."); *but see Takacs v. A.G. Edwards & Sons*, 444 F. Supp. 2d 1100, 1113–14 (S.D. Cal. 2006) (declining to follow *Walton* and concluding the plain language of § 207(i) supports individual workweek calculations). Forster did not provide the Court with a week-by-week breakdown of the commissions paid, which appear to have been paid monthly, except for the first month of April 2012 in which Forster's engineer bonus was paid the following month, and twice in July 2012, November 2012, and February 2013. Doc. 44-3. Without evidence in the record to establish which commissions were paid for which pay period, the Court cannot determine individual weekly rates of pay if it were inclined to do so. On the motions for summary judgment, the Court evaluates the regular rate of pay based on the total number of hours worked and amount paid but recognizes this rate may differ from the rate(s) proved at trial.

September 2012. Doc. 45 at 5 ¶¶ 10–14, 16. Although Forster presents evidence he reported to Thompson directly, Doc. 44-1 ¶¶ 6, 9, 15, Doc. 44-13, and Thompson supervised him and assigned him projects, individually or with Eizenhafer, Doc. 44-17, Doc. 44-18, Doc. 44-20, viewing the evidence in the light most favorable to Thompson as the non-movant, Forster has not met his burden to show the absence of a genuine dispute of material fact as to whether Thompson could have been Forster's employer, at a minimum, for the first nine months of his employment. Forster is not entitled to summary judgment on Thompson's individual liability.

**B.    *Thompson's Motion for Summary Judgment***

Thompson makes no arguments in his motion but instead states he is seeking summary judgment under Rule 56, cites declarations and materials produced in discovery as containing the material undisputed facts, attached as exhibits to his motion, and moves the Court to grant summary judgment in his favor. Doc. 45. Forster responds Thompson's motion is deficient because it does not identify each claim or defense on which he seeks summary judgment, identify the facts on which he relies to seek summary judgment, or contain a memorandum of authority depriving Forster of his opportunity to respond to his factual and legal assertions. Doc. 46 at 1–2. Forster argues Thompson produced no factual basis for summary judgment on Forster's overtime-wage claim to demonstrate entitlement to an exemption, maintenance of accurate time records, payment of proper compensation, the number of hours Forster worked, the amount of damages, and the absence of individual liability. Doc. 46 at 3–4.

Rule 56(a) requires a party moving for summary judgment to identify "each claim or defense . . . on which summary judgment is sought." Fed R. Civ. P. Rule 56(a). Although the Court construes pro se filings liberally, *Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1329 (11th Cir. 2010), it cannot serve as de facto counsel, *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "There is no burden on the ... court to distill every potential argument that could be made based upon the materials submitted before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Thompson makes no argument on his entitlement to summary judgment. Instead, he submits his record evidence and leaves the Court to discern potential bases for summary judgment. The Court declines to do so. *See Resolution Trust Corp.*, 43 F.3d at 599. In construing the motion liberally, the Court considered the evidence presented as though in opposition to Forster's motion for summary judgment, as discussed above. Thompson has failed to meet the burden to show an absence of material fact on any issue and is not entitled to summary judgment.

## C.   *Forster's Motion for Default Judgment*

Forster seeks a default judgment against Smartstream under Federal Rule of Civil Procedure 55(b)(2) and the Court's order, Doc. 48. A court may not enter judgment against a defaulting defendant where a jointly liable or similarly situated non-defaulting defendant prevails on the merits of the case. *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (citing *Frow v.*

*De La Vega,* 82 U.S. 552 (1872)); *see also* Wright & Miller § 2690 (stating that when multiple defendants have closely related defenses or are alleged to be jointly liable, "entry of judgment … should await an adjudication of the liability of the nondefaulting defendants"). Where a plaintiff makes joint claims against multiple defendants and one defaults, the court should enter a default against that defendant and proceed with the case on the merits against the remaining defendants. *Frow,* 82 U.S. at 554. Here, because the Court denies summary judgment against Thompson, the case will continue on his liability. Forster seeks to hold Thompson and Smartstream jointly and severally liable. The Court therefore denies the motion as premature without prejudice to refiling after resolving the case against Thompson.

## IV.  Conclusion

The Court:

1.   **denies** the motions for summary judgment, Docs. 44, 45, and

2.   **denies** the plaintiff's motion for default judgment, Doc. 51, without prejudice to refiling after resolution on the merits against Thompson.

**Ordered** in Jacksonville, Florida, on January 6, 2016.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record

Robert Thompson
11082 Creekview Drive
Jacksonville, FL 32225